IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

**MELINDA S. CHURCHMAN,**  6:12-CV-00978 RE

Plaintiff,  **OPINION AND ORDER**

v.

**CAROLYN W. COLVIN,**
Acting Commissioner of Social Security,

Defendant.

**REDDEN**, Judge:

Plaintiff Melinda Churchman ("Churchman") brings this action to obtain judicial review of a final decision of the Commissioner of the Social Security Administration ("Commissioner") denying her claim for Disability Insurance Benefits and Supplemental Security Income benefits. For the reasons set forth below, the decision of the Commissioner is affirmed and this matter is dismissed.

1 - OPINION AND ORDER

## BACKGROUND

Born in 1978, Churchman was 28 years old on her alleged onset date of July 17, 2007. She is a high school graduate. Tr. 24. She has worked as a care giver. Tr. 192. In September 2009, Churchman filed applications for disability insurance benefits and supplemental security income benefits, alleging disability since July 17, 2007. Tr. 164. Her applications were denied initially and upon reconsideration. After a June 2011 hearing, an Administrative Law Judge ("ALJ") found her not disabled. Churchman's request for review was denied, making the ALJ's decision the final decision of the Commissioner.

## ALJ's DECISION

The ALJ found Churchman had the medically determinable severe impairments of degenerative disc disease and obesity. Tr. 13.

The ALJ found that Churchman's impairments did not meet or equal the requirements of a listed impairment. *Id.*

The ALJ determined that Churchman retained the residual functional capacity ("RFC") to perform a limited range of light work. Tr. 14.

The ALJ found Churchman was not disabled, was unable to perform her past relevant work as a care giver, but retained the ability to perform other work, including ticket seller, assembler of small products, and electronics assembler. Tr. 18.

The medical records accurately set out Churchman's medical history as it relates to her claim for benefits. The court has carefully reviewed the medical record, and the parties are familiar with it. Accordingly, the details of those medical records will be set out below only as they are relevant to the issues before the court.

2 - OPINION AND ORDER

## DISCUSSION

Churchman contends that the ALJ erred by: (1) finding her not fully credible; (2) improperly weighing medical evidence; (3) failing to resolve ambiguous evidence; and (4) failing to credit lay testimony.

## I. Credibility

The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities. *Andrews v. Shalala,* 53 F.3d 1035, 1039 (9th Cir 1995). However, the ALJ's findings must be supported by specific, cogent reasons. *Reddick v. Chater,* 157 F.3d 715, 722 (9th Cir 1998). Unless there is affirmative evidence showing that the claimant is malingering, the Commissioner's reason for rejecting the claimant's testimony must be "clear and convincing." *Id.* The ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints. *Id.* The evidence upon which the ALJ relies must be substantial. *Reddick,* 157 F.3d at 724. *See also Holohan v. Massinari,* 246 F.3d 1195, 1208 (9th Cir 2001). General findings (e.g., "record in general" indicates improvement) are an insufficient basis to support an adverse credibility determination. *Reddick* at 722. *See also Holohan,* 246 F.3d at 1208. The ALJ must make a credibility determination with findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony. *Thomas v. Barnhart,* 278 F.3d 947, 958 (9th Cir 2002).

In deciding whether to accept a claimant's subjective symptom testimony, "an ALJ must perform two stages of analysis: the *Cotton* analysis and an analysis of the credibility of the claimant's testimony regarding the severity of her symptoms." [Footnote omitted.] *Smolen v. Chater,* 80 F.3d 1273, 1281 (9th Cir 1996).

3 - OPINION AND ORDER

> Under the *Cotton* test, a claimant who alleges disability based on subjective symptoms "must produce objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged...." *Bunnell,* 947 F.2d at 344 (quoting 42 U.S.C. § 423 (d)(5)(A) (1988)); *Cotton,* 799 F.2d at 1407-08. The *Cotton* test imposes only two requirements on the claimant: (1) she must produce objective medical evidence of an impairment or impairments; and (2) she must show that the impairment or combination of impairments *could reasonably be expected to* (not that it did in fact) produce some degree of symptom.

*Id.* at 1282.

The ALJ found Churchman's medically determinable impairments could reasonably be expected to cause her symptoms, but Churchman was not fully credible to the extent her symptoms are inconsistent with the RFC. Tr. 16.

The ALJ properly found Churchman's credibility reduced by the inconsistency between her statements on a pain questionnaire that she could be up for four hours before needing to rest, and her testimony that she could only stand or sit for five minutes at a time. Tr. 15, 42, 216. The ALJ properly noted Churchman's allegations are not supported by objective medical findings. Tr. 21. The ALJ properly noted Dr. Nolan's observance of positive Waddell's signs and symptom magnification. Tr. 16-17. The ALJ identified clear and convincing reasons to find Churchman less than fully credible and that determination is supported by substantial evidence.

## II. The Medical Evidence

Disability opinions are reserved for the Commissioner. 20 C.F.R. §§ 404.1527(e)(1); 416.927(e)(1). If no conflict arises between medical source opinions, the ALJ generally must accord greater weight to the opinion of a treating physician than that of an examining physician. *Lester v. Chater,* 81 F.3d 821, 830 (9th Cir. 1995). In such circumstances the ALJ should also

give greater weight to the opinion of an examining physician over that of a reviewing physician. *Id.* But, if two medical source opinions conflict, an ALJ need only give "specific and legitimate reasons" for discrediting one opinion in favor of another. *Id.* at 830. The ALJ may reject physician opinions that are "brief, conclusory, and inadequately supported by clinical findings." *Bayliss,* 427 F.3d at 1216.

The medical record is very small. The entire record is summarized below.

On October 17, 2005, Dr. Springer ordered an MRI of the lumbar spine for low back pain increasing for two months. Tr. 311. The MRI was read by Richard Clark, M.D., whose impression was "1. Diskogenic degenerative disease L3-4 through L5-S1. 2. No evidence for herniated nucleus pulposus. 3. Slight central disk annulus at L3-4 with no complete foraminal obstruction." *Id.* Dr. Clark noted there was a "loss of disk signal and slight flattening at L3-4, L4-5, and L5-S1." Tr. 311. There is no evidence of what, if anything, Dr. Springer prescribed as a result of this MRI.

On January 19, 2007, Dr. Springer examined Churchman for complaints of back pain. Tr. 261. Dr. Springer noted November 2, 2005 chart notes in which the October 2005 MRI showed degenerative disk disease at L3-4 and L5-S1 and "some central disk stenosis at the L3-4 area." *Id.* The November 2, 2005 chart notes are not in the record. Dr. Springer recorded that Churchman was still working as a care giver, and her back pain increased after moving firewood and furniture. He stated Churchman "needs to have a new MRI and she needs an orthopedic consultation; however, she cannot afford that at all." Tr. 261. Dr. Springer found marked tenderness to the LS spine, minimal flexion and extension without significant pain, and very limited lateral and twisting movements. *Id.* Dr. Springer diagnosed an exacerbation of low back

5 - OPINION AND ORDER

pain and morbid obesity, and recommended Churchman take Ibuprofen 600, use Icy Hot, and alternate between heat and ice.

On October 23, 2007, Churchman was treated in the emergency room for an exacerbation of chronic low back pain that occurred after lifting boxes. Tr. 264. Muscle strength was 5/5 in all four extremities. Flexion and extension were limited by pain. Her back was non tender to midline palpation and there were paraspinous muscle spasms. Tr. 265. Cushman received an injection of Toradol. The diagnosis was muscle strain. Tr. 271.

On September 7, 2008, Cushman was treated in the emergency room for back pain exacerbated by lifting a watermelon and groceries. Tr. 274. Cushman stated that she did not normally take medication for her back pain, and reported that she used to get pain medication years ago, but her doctor stopped the medication and told her she didn't need it anymore. Strength was 5/5 in all four extremities. She was able to walk on toes and heels, and had mild diffuse lumbar tenderness. Tr. 275. Cushman received a Toradol injection, Ultram for pain and Robaxin for muscle spasm.

On September 22, 2008, Dr. Springer examined Churchman for increasing back pain. Tr. 262. Dr. Springer encouraged Churchman to apply for employment, and prescribed tramadol and Flexeril.

A November 3, 2009, an xray was read by Stephan G. Thiede, M.D., whose impression was:

> 1. Dysmorphic anterior superior L4 vertebral body likely from old traumatic injury and subsequent healing.
> 2. No significant listhesis.
> 3. No additional vertebral compression deformities or acute fractures.

6 - OPINION AND ORDER

        4. Facet hypertrophy predominantly at L4-5, L5-S1.

Tr. 280. The xray was ordered by William Habjan, D.O., but his records are not in the record before the court, and there is no evidence Cushman received any treatment as a result of the xray.

On November 14, 2009, Raymond P. Nolan, M.D., Ph.D., performed a consultative examination of Cushman. Tr. 282-83. Dr. Nolan reviewed Cushman's record, and noted the reference to the 2005 MRI. Cushman reported daily back pain, that she can sit for not more than 15 minutes, that she generally lies down most of the day, that she can walk less than one half block, and stand for 10 to 15 minutes.

Dr. Nolan concluded:

> Chronic low back pain syndrome. Positive Waddell's testing. Some minor grunting and groaning behavior. Marked restriction of voluntary lumbar range of motion, considered to be out of proportion to her back presentation. As a cautionary note, however, review of Dr. Springer's outside records includes a comment of marked restriction of lumbar range of motion without actual quantitation. Nonetheless, the positive Waddells' testing, and grunting and groaning behavior dictates a need to view her testimony, with some cautious skepticism. For example, her testimony regarding restrictions of standing, sitting and walking and spending most of her day in bed seems somewhat extreme.
>
> In reference to functional capacities. I would have her avoid repetitive bending, twisting and turning and to limit lifting and carrying to no more than 10 pounds on a frequent basis and up to 20 pounds occasionally. She should be able to sit for about six hours in an eight-hour day with frequent position changes as needed for comfort. She should be able to stand and/or walk at least four hours in an eight-hour day with opportunity for breaks as needed for comfort. Her communication skills are adequate.

Tr. 283.

On June 23, 2010, Shannon Thom examined Churchman for back pain "x 2mo" and right knee pain. Tr. 304. It is not clear whether Ms. Thom is an M.D. or has other credentials. Ms.

7 - OPINION AND ORDER

Thom diagnosed lumbago. Churchman was tender in the lumbar and sacroiliac regions, her range of motion was normal except with flexion and extension. Muscle strength was normal, as were toe and heel walking. Tr. 306. Ms. Thom prescribed Naproxen and Cyclobenzaprine. *Id.*

The ALJ found Churchman had the RFC to perform light work with lifting and carrying of 20 pounds occasionally and 10 pounds frequently, standing and walking four hours of an eight hour workday and sitting six hours of an eight hour workday with a change of position every 15 minutes while performing essential tasks. She can frequently balance, kneel and climb ramps and stairs and occasionally stoop, crouch, crawl and climb ladders, ropes or scaffolds.

### A. The ALJ Did Not Err By Relying on Dr. Nolan's Assessment

Churchman contends Dr. Nolan's assessment was improperly based on another physician's reference to MRI images, and that Dr. Nolan did not have access, apparently, to the November 3, 2009 xray. However, the ALJ was entitled to rely on Dr. Nolan's opinion based on Dr. Nolan's own examination. *Tonapetyan v. Halter,* 242 F.3d 1144, 1149 (9th Cir. 2001). The 2005 MRI and November 2009 xray do not contradict Dr. Nolan's opinion. The 2005 MRI predates the date Churchman contends she became disabled by almost two years. Tr. 11, 311. Dr. Springer noted in January 2007 that Churchman continued to work at a job classified as heavy exertion as performed by Churchman. Tr. 50, 261. Dr. Springer encouraged Churchman to find employment in September 2008, so the ALJ could reasonably infer that Dr. Springer thought Churchman was capable of sustaining employment.

### B. The ALJ Did Not Err by Rejecting Dr. Springer

Churchman argues the ALJ erred by rejecting Dr. Springer's January 2007 opinion that Churchman required an MRI and orthopedic consultation. The ALJ does not have to discuss every piece of evidence, and need not discuss evidence that is neither significant nor probative. *Howard ex rel. Wolff v. Barnhart,* 341 F.3d 1006, 1012 (9th Cir. 2003). Neither Dr. Springer nor the 2005 MRI specifically addressed Churchman's functional limitations, and the Commissioner reasonably ordered a consultative examination and relied on that examination.

### C. The ALJ Did Not Err By Failing to Resolve Ambiguous Evidence

Churchman argues there was ambiguous evidence because the 2005 MRI indicated a greater degree of physical abnormality than the November 2009 xray. She concedes the ALJ ordered a physical consultation and a second hearing to allow her to obtain representation. Plaintiff's Brief, p. 8. As set out above, Dr. Springer's January 2007 chart note regarding an MRI and orthopedic consultation do not support a determination of disability when the claimant was at that time working full time at a heavy exertional level.

The ALJ's interpretation of the evidence was reasonable and supported by substantial evidence. *Rollins v. Massanari,* 261 F.3d 853, 857 (9th Cir. 2001)(citations omitted).

### III. Lay Testimony

The ALJ has a duty to consider lay witness testimony. 20 C.F.R. § 404.1513(d); 404.1545(a)(3); 416.945(a)(3); 416.913(d); *Lewis v. Apfel,* 236 F.3d 503, 511 (9th Cir. 2001). Friends and family members in a position to observe the claimant's symptoms and daily activities are competent to testify regarding the claimant's condition. *Dodrill v. Shalala,* 12 F.3d 915, 918-19 (9th Cir. 1993). The ALJ may not reject such testimony without comment and must give reasons germane to the witness for rejecting her testimony. *Nguyen v. Chater,* 100 F.3d 1462,

1467 (9th Cir. 1996). However, inconsistency with the medical evidence may constitute a germane reason. *Lewis*, 236 F.3d at 512. The ALJ may also reject lay testimony predicated upon the testimony of a claimant properly found not credible. *Valentine v. Astrue*, 574 F.3d 685, 694 (9th Cir. 2009).

Suzan Churchman completed a statement in October 2009 in which she states that her daughter rests all day, can't sleep at night, and cannot cook large meals. Tr. 208-10. She helps her daughter put the laundry into the dryer, and reports her daughter cannot do house or yard work because she hurts too much. Suzan Churchman wrote that her daughter likes to read and watch television, that she does this lying down, she shops for groceries every two weeks, and cannot walk very far.

The ALJ properly noted that the lay witness testimony was inconsistent with the medical evidence. Tr. 16. This is a germane reason to reject the testimony

## CONCLUSION

The Commissioner's decision that Churchman is not disabled is based upon the correct legal standards and supported by substantial evidence. The Commissioner's decision is affirmed.

IT IS SO ORDERED.

Dated this 11 day of November, 2013.

JAMES A. REDDEN
United States District Judge

10 - OPINION AND ORDER